**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vanessa Ramirez, | No. CV-16-00029-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Mitel (Delaware) Incorporated, et al., | |
| Defendants. | |

Plaintiff Vanessa Ramirez asserts claims against Mitel (Delaware) Inc., Mitel Communications, Inc., Mitel Cloud Services, Inc., and Mitel Business Systems, Inc. (collectively, "Mitel" or "Defendants"), for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* ("Title VII"), and 42 U.S.C. § 1981. Doc. 1. Mitel moves for summary judgment on all claims. Doc. 34. The motion is fully briefed. Docs. 34, 35, 37, 38, 43, 44. For the reasons that follow, Mitel's motion will be granted.[1]

**I.   Background.**

Plaintiff began working for Mitel (then known as Inter-Tel Network Services) on May 24, 2004, as a Sales Analyst. Doc. 35, ¶ 1. In 2008, Plaintiff was selected for a job

---

[1] Because oral argument will not aid in the Court's decision, the parties' request for oral argument is denied. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

within Mitel as a Sales Administrator. *Id.*, ¶ 2. In February 2009, Brenda Cordova became Plaintiff's manager. *Id.*, ¶ 3. In March 2013, Plaintiff's sales administration department, located in Mesa, Arizona, merged with the order administration department, located in Reno, Nevada, and Plaintiff became a Sales/Order Administrator. *Id.*, ¶ 4. The merged team consisted of eight members: Plaintiff, Cordova, Denise Ramos, and Tamara Benton in Mesa, and Barbara Scofield, Danielle Barraza, Melissa Hills, and Allison Dunmire in Reno. *Id.*, ¶¶ 5, 7. Dunmire was the supervisor of the merged team, but Cordova continued as Plaintiff's manager until June 2014. *Id.*, ¶ 5. Ramos is Plaintiff's aunt. *Id.*, ¶ 6.

Immediately following the merger, Plaintiff and Dunmire "began having issues." *Id.*, ¶ 8. Plaintiff alleges several instances of disparate treatment by Dunmire against her and her Hispanic co-workers with regard to hours, vacation, pay, overtime, training, and one instance involving a racially charged comment. *See* Doc. 1, ¶¶ 16-22; Doc. 35-3 at 36. In November 2014, Plaintiff applied for a transfer out of Dunmire's department. Doc. 1, ¶ 26. Her application was denied because Plaintiff's mother already worked in the department Plaintiff applied for, and, according to Defendants, allowing Plaintiff's transfer "would violate company policy against relatives working together." *Id.*; Doc. 35, ¶¶ 39-42.[2]

Plaintiff alleges that she reported Dunmire's disparate treatment on numerous occasions to Human Resources, but nothing was done. Doc. 1, ¶ 27. On December 1, 2014, Plaintiff resigned, claiming that she "had no other choice[.]" Doc. 37 at 6; Doc. 35-15 at 2-3. Soon thereafter, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (Doc. 35-15), as well as applications for government health/nutrition benefits (Doc. 37 at 6) and unemployment benefits with the Arizona Department of Economic Security (Doc. 35-18 at 2). Upon review of Plaintiff's

---

[2] Mitel's policy states: "Judgement should be used in the placement of employees who are closely related. It is recommended that closely related employees not be employed in a direct reporting relationship." Doc. 35-17 at 2. The policy defines "closely related" to include a spouse, child, mother, father, grandparent, grandchild, or sibling, but not an aunt or uncle. *Id.*

- 2 -

application for unemployment benefits, an agency deputy determined that "[Plaintiff] voluntarily left work without good cause in connection with [her] employment[,]" and denied her application. *Id.* On appeal, an Administrative Law Judge affirmed the deputy's decision and reasoning. Doc. 35-11.

On January 6, 2016, Plaintiff filed this lawsuit. Defendants now move for summary judgment on all counts. Doc. 34.

**II.   Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.   Analysis.**

    **A.   Discrimination.**

Title VII provides that an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). "Similarly, § 1981 prohibits [race] discrimination in the 'benefits, privileges, terms and conditions' of employment." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) (quoting 42 U.S.C. § 1981(b)). A plaintiff may establish a violation

of Title VII or § 1981 by proving that discrimination created a hostile work environment. *See, e.g.*, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (Title VII); *Manatt v. Bank of America, NA*, 339 F.3d 792, 797 (9th Cir. 2003) (§ 1981). To prevail on her hostile work environment claim, Plaintiff must show that (1) she was subjected to verbal or physical conduct because of her race or national origin, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 817 (9th Cir. 2002) (internal quotations omitted); *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998).

Plaintiff was represented by counsel when this case was filed, but her counsel later withdrew. Doc. 20. Plaintiff's pro se filings in response to Defendant's motion for summary judgment contain a somewhat rambling and disorganized discussion (Docs. 37, 38), but the Court has reviewed them with care to identify Plaintiff's specific factual assertions and the evidence she provides in support. The Court has identified thirteen factual assertions Plaintiff makes in support of her hostile work environment claim. The Court will summarize each assertion and the evidence, if any, provided to support it.

(1) Dunmire "was constantly questioning Plaintiff's whereabouts and work performance through email, phone calls and with other coworkers on the team, even when Plaintiff was present at work and available via email and desk phone." Doc. 37 at 2 (citing Ex. 8 (email exchange between Plaintiff and Dunmire in which Dunmire states she contacted Plaintiff's coworkers looking for Plaintiff after failing to reach her by other means)).

(2) Dunmire would question Plaintiff's hours worked during the day, as well as any and all overtime, and would require a detailed email from Plaintiff accounting for her hours and the orders on which she worked. *Id.* at 3. No evidence is cited in support.

(3) Dunmire initiated a policy requiring that overtime be preapproved. *Id.* (citing Ex. 6 (email from Dunmire to her team stating, "[o]vertime within the company is

approved on an as needed basis when necessary and must be pre-approved prior to being worked.")).

(4) Dunmire would deny Plaintiff training or assistance with her workload. *Id.* (citing Ex. 7 (email chain between Plaintiff and Cordova regarding Plaintiff's overtime), Ex. 9 (email chain between Plaintiff and Dunmire regarding Plaintiff's work order status), Ex. 11 (email chain between Plaintiff and Dunmire in which Plaintiff accuses Dunmire of refusing to "have the team help" with her workload)).

(5) Dunmire refused to provide instructions that she claimed to have already given, and then would single Plaintiff out for orders completed incorrectly and accuse her of not being able to follow instructions. *Id.* (citing Ex. 4 (email chain between Plaintiff and Dunmire where Plaintiff asserts the team has not received adequate training), Ex. 5 (same)).

(6) Dunmire would run reports on the team's work status, "and the reports for Plaintiff were always incorrect." Plaintiff and Brenda Cordova would prove otherwise. *Id.* No evidence is cited in support.

(7) Dunmire "would not say 'hi' to Plaintiff" and "would look at Plaintiff in a very unprofessional and disrespectful manner." *Id.* Dunmire would "sit in a cubicle diagonal from Plaintiff's cubicle and scoot her chair over and stare at Plaintiff not saying anything." *Id.* (citing Ex. 18 (letter from T. Benton in support of Plaintiff's allegations)).

(8) On at least two occasions, Dunmire failed to turn in timesheets for Plaintiff and/or her Hispanic co-workers. *Id.* at 4. Plaintiff cites Exhibit 27, but no Exhibit 27 is attached to her statement of facts. Doc. 38 at 3.

(9) On one occasion, Dunmire made a racially-charged statement. According to Plaintiff, while she and a few co-workers were talking at a training meeting in Mesa, Plaintiff commented that she does not "get red" when tanning, but instead she "get[s] darker." *Id.* at 4; *see also* Doc. 35-3 at 36. In response, Dunmire said "[y]eah, that's because you are Mexican." *Id.* Plaintiff states that Dunmire's comments "made it clear [that] this is why she was treated differently." *Id.*; Doc. 38 at 3.

(10) Dunmire would deny requests from Plaintiff for training and would refuse to answer questions, saying that "the more practice Plaintiff got she would understand better." Doc. 37 at 4. No evidence is cited in support.

(11) Following merger of the Reno and Mesa teams, Dunmire "wanted to change Plaintiff's work hours and remove telecommute[,]" but her attempt "was denied by VP Jon Brinton." *Id.* at 5. This change was important to Plaintiff because, under her prior supervisor, she would work from home in the morning on certain days until she dropped her daughter at school. *Id.* When Plaintiff asked to continue this practice, Dunmire asked Plaintiff "to limit it to one day every 1 to 2 weeks." *Id.* In the alternative, Dunmire offered to change Plaintiff's hours to accommodate Plaintiff. *Id.* Plaintiff declined to have her hours changed. *Id.* Soon after, Dunmire sent an email to the entire team with everyone's new hours. Although Plaintiff's were not changed, Dunmire had approved one team member from Reno, Danielle Barraza, to work from home every morning because of her son's school schedule. *Id.* at 6 (citing Ex. 10 (email from Dunmire to all members of her team detailing scheduling changes)).

(12) "Plaintiff was asked to cancel and change scheduled vacation days off[.]" *Id.* On one occasion, "Dunmire asked Plaintiff to be present on a Tuesday for training[,]" but Dunmire "was not present to work until Wednesday." *Id.* (citing Ex. 1 (email between Plaintiff and Cordova where Cordova acknowledges that Plaintiff told Dunmire she would be in the office on a Tuesday for training), Ex. 2 (email between Plaintiff and Cordova regarding the scheduling of Plaintiff's vacation)).

(13) Plaintiff did not receive a pay raise in the spring of 2014. *Id.* at 6. When Plaintiff was hired, team members were given the opportunity to earn a $250 bonus periodically. Following the merger, management informed Plaintiff's team that the bonus would be "taken away permanently or rolled into plaintiff's pay." *Id.* According to Plaintiff, "Todd West [said] this would have no effect on pay raise as the department was going to be re-evaluated and pay would be leveled across the board." *Id.* But instead, "Plaintiff's bonus was rolled into pay and no pay raise or re-evaluation was ever

done" and "the team in Reno was given a pay increase." *Id.* No evidence is cited in support.

Defendants argue that these assertions do not create a genuine issue of material fact sufficient to survive summary judgment. Doc. 43 at 2, 6. The Court agrees.

To establish a hostile work environment, Plaintiff must show that she "was subjected to verbal or physical conduct *because of her race or national origin*[.]" *Kang*, 296 F.3d at 817. In all but two of her assertions, Plaintiff provides no evidence that Dunmire's hostility was based on Plaintiff's race or national origin and no evidence that Dunmire showed similar hostility toward other Hispanics on the team. Specifically, assertions (1) through (7) and (10) through (13) include no evidence to suggest that Dunmire's actions were based on race or national origin. *See* Doc. 37 at 3-6. Indeed, in some instances, Plaintiff provides evidence that Dunmire did not mistreat Plaintiff's Hispanic co-workers in a similar manner. *See* Doc. 35-3 at 31, 34-35 (Plaintiff's deposition: Dunmire did not scrutinize Ramos' overtime and never "stared" or made "funny faces" at Ramos); Doc. 37 at 2-3 (Plaintiff was "the only one" required to submit daily detailed order status reports to Dunmire); Doc. 37 at 5 (flexible scheduling granted to co-worker Danielle Barraza). What is more, assertions (2), (6), and (10) are not supported by any evidence, and Plaintiff conceded in her deposition that the alleged change of hours in assertion (11) never occurred. Doc. 35-3 at 46.

In other assertions, Plaintiff makes clear that Dunmire's hostile conduct was directed toward the entire team, Hispanics and non-Hispanics alike. For instance, Plaintiff asserts in item (10) that the Mesa team had not been provided training. And in her deposition, Plaintiff conceded that the changes to the overtime approval process, mentioned in assertion (3), applied to the entire group, not just Plaintiff. Doc. 35-3 at 31 ("the entire team received [Dunmire's] emails" regarding overtime and that "the entire team had to get the overtime preapproved"). When Dunmire's conduct is directed at the entire team, a reasonable factfinder could not infer that it was motivated by Plaintiff's race or national origin.

1      This leaves assertions (8) and (9) as the only two in which discriminatory
2 mistreatment is suggested.  In assertion (8), Plaintiff states that Dunmire failed to submit
3 her or her Hispanic co-worker's timecard on two occasions.  Doc. 37 at 4.  The first time,
4 Dunmire turned in the time sheets for all team members except Plaintiff and Ramos.  *Id.*
5 The second time, which occurred after Ramos left the company, Plaintiff's time sheet
6 was the only one not submitted.  *Id.*  Plaintiff admitted in her deposition that each
7 instance was promptly remedied and that she received her full pay on time.  Doc. 35-3 at
8 48.  Plaintiff also concedes that she does not know if Dunmire ever failed to submit the
9 timecard of any other employee.  *Id.*  Even if a reasonable jury could infer that these two
10 instances were based on Plaintiff's race or national origin, Plaintiff has not shown that
11 "the conduct was sufficiently severe or pervasive to alter the conditions of her
12 employment and create an abusive work environment," particularly when her pay was
13 received on time.  *Kang*, 296 F.3d at 817.

14      In assertion (9), Plaintiff claims that Dunmire made a discriminatory comment to
15 her – "that's because you are Mexican."  Doc. 35-3 at 6.  Dunmire denies making the
16 comment (Doc. 34 at 4, n.3), but the Court must take Plaintiff's assertion as true for
17 purposes of this summary judgment motion.  Even if true, however, the Court cannot
18 conclude that a reasonable factfinder would find this single comment – even when
19 combined with assertion (8) – to be sufficiently severe or pervasive to violate Title VII or
20 § 1981.  Courts look at all the circumstances, "including 'the frequency of the
21 discriminatory conduct; its severity; whether it is physically threatening or humiliating, or
22 a mere offensive utterance; and whether it unreasonably interferes with an employee's
23 work performance.'"  *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)
24 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)); *see also Oncale v.*
25 *Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998); *Vasquez v. Cty. of Los Angeles*, 349
26 F.3d 634, 642 (9th Cir. 2004).  The same analysis applies to race-based claims under 42
27 U.S.C. § 1981.  *Manatt*, 339 F.3d at 797.  "The required level of severity or seriousness
28 'varies inversely with the pervasiveness or frequency of the conduct.'"  *Nichols v. Azteca*

*Rest. Enters.*, 256 F.3d 864, 872 (9th Cir. 2001) (quoting *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)).  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (quotation marks and citation omitted).

Failing to turn in time sheets on two occasions and making one offensive comment based on national origin does not constitute the kind of severe and pervasive conduct that violates the federal civil rights laws.  *See Vasquez*, 349 F.3d at 642 (Ninth Circuit found the plaintiff's claim of continued racial harassment unsupported because it was based only on two racially discriminatory statements made more than six months apart, combined with two second-hand reports of verbal abuse, and two allegedly false performance complaints).  To be sure, such conduct is inappropriate, unwarranted, and unacceptable in the modern workplace, but the Court concludes that no reasonable factfinder could find these three incidents so "severe or pervasive [as] to alter the conditions of [Plaintiff's] employment and create an abusive work environment." *Kang*, 296 F.3d at 817.  And because Plaintiff has failed to provide evidence that Dunmire's other allegedly hostile actions – also inappropriate in a civilized work setting – were based on Plaintiff's race or national origin, they do not add to the actionable hostile work environment.

In short, Plaintiff has failed to make a showing sufficient to establish the existence of an element essential to her case and on which she will bear the burden of proof at trial. The Court therefore will grant Defendants' motion for summary judgment on her hostile work environment claim. *Celotex*, 477 U.S. at 322.

**B.     Retaliation.**

Title VII prohibits retaliation against an employee for opposing an unlawful employment practice or participating in a Title VII proceeding.  42 U.S.C. § 2000e-3(a). A successful retaliation claim must establish that (1) the employee engaged in a protected activity, (2) the employer took an adverse employment action against the employee, and (3) the employer would not have taken the adverse employment action but for a design to

retaliate. *Nilsson v. City of Mesa*, 503 F.3d 947, 953-54 (9th Cir. 2007); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2535 (2013) (clarifying that employee must show "but for" causation). The same elements apply to a retaliation claim under 42 U.S.C. § 1981. *Ballard v. Portland Gen. Elec. Co.*, 293 F. App'x 448, 449 (9th Cir. 2008). The filing of a charge of discrimination with the EEOC is a protected activity, as is the filing of an internal complaint alleging a Title VII violation. *See Bouman v. Block*, 940 F.2d 1211, 1228 (9th Cir. 1991); *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009).

Defendants concede that Plaintiff engaged in a protected activity "when she reported what she perceived to be discriminatory treatment of her by Dunmire." Doc. 34 at 12. Defendants argue, however, that Plaintiff has not shown that she was subjected to any adverse employment action as a result of her protected activities, or that there is a causal link between protected activity and any adverse employment action. *Id.* at 12-13.

### 1. Adverse Employment Action.

Title VII's anti-retaliation provision protects against "materially adverse" employment actions – actions that might dissuade a reasonable worker from making or supporting a charge of discrimination – but not against "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The Court's role at the summary judgment stage is limited to determining whether there is evidence in the record that would support a reasonable jury in finding that the action complained of was materially adverse. Where the evidence would permit no such finding, the Court may grant summary judgment. *See, e.g.*, *Johnson v. Fed. Express Corp.*, No. CV-14-02428-PHX-DGC, 2016 WL 1593811, at *4 (D. Ariz. Apr. 21, 2016) (citing *Sillars v. Nevada*, 385 F. App'x 669, 671 (9th Cir. 2010) (affirming grant of summary judgment because employee "presented no evidence that the position to which she was moved differed in any material way from the position she occupied prior to her complaints")). In determining whether a reasonable jury could find material adversity, the Court must

1 consider the context in which the action occurred. Because "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships . . . an act that would be immaterial in some situations is material in others." *White*, 548 U.S. at 69 (citations and quotation marks omitted).

Plaintiff asserts that Defendants took an adverse employment action by denying her November 2014 transfer request. Doc. 37 at 5; *see also* Doc. 1, ¶¶ 24-27, 31-37. Defendants argue that the denial did not constitute an adverse employment action. Doc. 34 at 13-14.

The Ninth Circuit has stated that lateral transfers may be considered adverse employment actions. *See Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000) ("The EEOC test covers lateral transfers, unfavorable job references, and changes in work schedules. These actions are all reasonably likely to deter employees from engaging in protected activity."). Defendants argue that no Ninth Circuit court has "specifically held that the *refusal* to grant a lateral transfer request constitutes an adverse employment action." Doc. 34 at 13. Defendants further argue that for an employer's denial of a requested transfer to be an adverse employment action, it must either be between a non-supervisory and supervisory position or must involve a change in the employee's compensation. *Id.* (citing *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1494-95 (9th Cir. 1995)).

Defendants' reliance on *Odima* is misplaced. In *Odima*, the Ninth Circuit considered whether an employer's denial of an employee's three transfer requests could be considered an adverse employment action. 53 F.3d at 1494. The court suggested that the employee needed to show he was denied a promotion or a change in the form of his compensation. *Id.* But since *Odima* was decided in 1995, the Ninth Circuit has adopted the EEOC test for adverse employer actions, which expressly covers lateral transfers, not just promotions. *See Ray*, 217 F.3d at 1243 ("Because the EEOC standard is consistent with our prior case law and effectuates the language and purpose of Title VII, we adopt it, and hold that an action is cognizable as an adverse employment action if it is reasonably

likely to deter employees from engaging in protected activity."). In this instance, a reasonable jury could find that Plaintiff would be dissuaded from engaging in a protected act if she knew Defendants would deny her request for a lateral transfer. Plaintiff has alleged a materially adverse employment action.

### 2. Causation.

Plaintiff must also show a causal link between her protected activity and Defendants' denial of her November 2014 transfer request. The Supreme Court has held that Title VII retaliation claims "must be proved according to traditional principles of but-for causation." *Nassar*, 133 S.Ct. at 2533. To establish causation, an employee must provide evidence, either direct or circumstantial, that the individuals responsible for the adverse employment action knew about the protected activity and intended to retaliate because of it. *See Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) ("Raad must present evidence from which a reasonable trier of fact could conclude that the school principals who refused to hire her were aware that she had engaged in protected activity."); *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112-15 (9th Cir. 2011) (employee must provide "direct or circumstantial evidence of discriminatory intent" on part of employer).

"[I]n some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). The Ninth Circuit has "made clear that a specified time period cannot be a mechanically applied criterion, and ha[s] cautioned against analyzing temporal proximity without regard to its factual setting." *Fazeli v. Bank of Am., NA*, 525 F. App'x 570, 571 (9th Cir. 2013) (citations and internal quotation marks omitted). Nonetheless, courts generally have "required temporal proximity of less than three months between the protected activity and the adverse employment action for the employee to establish causation based on timing alone." *Mahoe v. Operating Eng'rs Local Union No. 3*, No. CIV. 13-00186 HG-BMK, 2014 WL 6685812, at *8 (D. Haw. Nov. 25, 2014) (collecting cases). This comports with Supreme Court precedent, which

holds that the temporal proximity between the protected action and the adverse employment action must be "very close" to support an inference of causation, and that "[a]ction taken . . . 20 months later suggests, by itself, no causality at all." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citations omitted).

Courts apply the *McDonnell Douglas* burden-shifting framework to determine whether an employee can establish causation. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464-65 (9th Cir. 1994). Under this framework, an employee must first make a prima facie showing of causation. *Id.* The burden then shifts to the employer to advance "legitimate, non-retaliatory reasons for any adverse actions taken" against the employee. *Id.* "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citation and internal quotation marks omitted). If the employer produces evidence suggesting a non-retaliatory reason for its action, the employee must show that the proffered reasons are pretextual. *Id.* An employee may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). "To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motive." *Vasquez*, 349 F.3d at 642.

Plaintiff alleges in her complaint that, in June 2014, she reported to "Human Resources that she felt she was being discriminated against by Dunmire, and that non-Hispanic, namely Caucasian employees were being treated more favorably." Doc. 1, ¶ 27. The record does not contain any other date for Plaintiff's protected activity, and in her response brief, Plaintiff states only that "[a]fter several complaints to HR Plaintiff asked to be transferred to NetSupport as a Sales Analyist." Doc. 37 at 6. Plaintiff's complaint alleges that she was denied a transfer to another department in late November 2014. Doc. 1, ¶¶ 25-26.

1    Plaintiff provides no evidence to show a causal link between her protected acts 2 and denial of her transfer request.  Plaintiff does not allege that Dunmire denied the 3 transfer request.  *Id.*  Nor does she argue that Dunmire instructed or persuaded others to 4 do so, or that the persons who denied the request knew of Plaintiff's protected activity.  5 Doc. 37 at 5.  And even if the Court were to take the unsupported November date as the 6 date when the transfer request was denied, the Court cannot conclude that a five-month 7 period between Plaintiff's protected activity and denial of the transfer suffices to establish 8 the needed link.  The Court accordingly finds that Defendants are entitled to summary 9 judgment on Plaintiff's retaliation claim.

10    Plaintiff's claim would also fail because Defendants provide a legitimate, non-11 retaliatory business reason for refusing to approve the transfer: company policy states that 12 "closely related employees not be employed in a direct reporting relationship[,]" and 13 evidence shows that the transfer would result in Plaintiff's mother having 14 "responsibilities for overseeing the hiring and productivity of Plaintiff, and for assigning 15 tasks for Plaintiff."  Doc. 34 at 15 & n.11.  Plaintiff argues that this explanation is 16 pretextual.  Doc. 37 at 5.  She states that she worked with her mother before at the 17 NetSupport department, as well as her aunt and brother, but provides no evidence to 18 support this assertion.  *Id.*  She further asserts that "there are several employees who are 19 currently employed with Mitel who are closely related and work in the same department," 20 but again provides no supporting evidence.  *Id.*  Plaintiff does not provide a single piece 21 of evidence to support her pretext claim, much less the "specific and substantial evidence 22 challenging the credibility of the employer's motive" required to be successful.  *Vasquez*, 23 349 F.3d at 642.

24    Based on evidence in the record, no reasonable jury could find that Defendants 25 engaged in retaliation against Plaintiff because of her protected act.  Accordingly, the 26 Court will grant Defendants' motion for summary judgment.

27  **C.   Constructive Discharge.**

28    Finally, Plaintiff appears to be asserting a claim for constructive discharge.

Docs. 1, 37. The Court concludes, however, that this claim cannot survive summary judgment. Plaintiff alleges that she was forced to quit working because she could no longer take "[t]he stress and constant harassment from [Dunmire]." Doc. 37 at 6. To the extent this constructive discharge is alleged to have resulted from a hostile work environment, it fails for the reasons set forth above – Plaintiff has not provided evidence sufficient to establish a hostile work environment claim. And to the extent Plaintiff asserts constructive discharge as part of her retaliation claim, it fails because Plaintiff does not allege or show that the constructive discharge occurred because of her protected activity. Rather, Plaintiff alleges that it occurred because of Dunmire's mistreatment.

**IT IS ORDERED** that Defendants' motion for summary judgment (Doc. 34) is **granted**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 28th day of February, 2017.

*David G. Campbell*
David G. Campbell
United States District Judge